IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER SCHOENFELD, | : | |
|     Plaintiff, | | Case No. 3:20-cv-159 |
| v. | : | JUDGE WALTER H. RICE |
| MERCEDES-BENZ USA, LLC, | | |
|     Defendant. | : | |

DECISION AND ENTRY OVERRULING DEFENDANT MERCEDES-BENZ USA, LLC'S MOTION TO COMPEL ARBITRATION (DOC. #16)

Plaintiff Christopher Schoenfeld filed suit against Mercedes-Benz USA, LLC ("MBUSA"), seeking relief under Ohio's Lemon Law, the Magnuson-Moss Warranty Act, and the Ohio Consumer Sales Practices Act. He also brought a claim of tortious breach of warranty. Doc. #11. This matter is currently before the Court on MBUSA's Motion to Compel Arbitration, Doc. #16.

I. **Background and Procedural History**

On June 25, 2019, Plaintiff purchased a new Mercedes-Benz AMG from Jeff Wyler Mercedes-Benz of Fort Mitchell, Kentucky, and paid for the vehicle in full. The Retail Purchase Agreement ("RPA") between Plaintiff and Jeff Wyler Mercedes-Benz contained an arbitration provision. Doc. #17-1, PageID#140. Plaintiff's vehicle came with a 48-month/50,000-mile warranty from the

manufacturer, Mercedes-Benz USA, LLC. That warranty contained no arbitration provision.

Within months, the "low engine oil" warning light and the "adaptive headlight inoperable" warning messages were repeatedly illuminated on the car's dashboard. After several unsuccessful attempts to fix these problems at Mercedes-Benz dealerships in Kentucky, Ohio and Florida, Plaintiff filed suit against MBUSA in the Montgomery County Court of Common Pleas. MBUSA removed the case to federal court. Plaintiff then filed an Amended Complaint, Doc. #11.

On August 20, 2020, MBUSA filed a Motion to Compel Arbitration, Doc. #16. That motion is now fully briefed. *See* Docs. ##17, 18. At issue is whether MBUSA, a nonsignatory to the RPA, can invoke the RPA's arbitration provision to compel Plaintiff to arbitrate this dispute.

## II. Analysis

### A. Arbitration Provision

The Retail Purchase Agreement ("RPA") between Plaintiff and Jeff Wyler Mercedes-Benz of Fort Mitchell contains the following arbitration provision:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including interpretation of this Agreement to Arbitrate and its application to the claim or dispute), between *you and us or our employees, successors or assigns*, which arises out of or relates to . . . the purchase or condition of this Vehicle, this Agreement, any other documents that are a part of the transaction, any products or services purchased in conjunction with the Vehicle or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Agreement), any alleged promises,

2

>representations, and warranties made or relied upon by the parties to this Agreement, and/or any alleged unfair, deceptive, or unconscionable acts or practices shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. . . .

Doc. #17-1, PageID#140 (emphasis added).

Notably, MBUSA is not a party to this RPA, and the RPA's definition of "we, us, our" is limited to "the Dealership that is identified in this Agreement and its authorized representatives." *Id.*

### B. Who Decides Question of Arbitrability?

The threshold issue in this case is whether the Court has authority to decide whether MBUSA, a non-signatory to the RPA, can compel Plaintiff to arbitrate his claims. MBUSA notes that parties to a contract can agree to arbitrate "'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A Ctr. West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). Nevertheless, any such delegation of authority to the arbitrator must be "clear and unmistakable." *Id.* at 69 n.1 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Here, the Arbitration provision in the RPA specifically delegates to the arbitrator the "interpretation of this Agreement to Arbitrate and its application to the claim or dispute." Doc. #17, PageID#140. MBUSA argues that, because the RPA contains this delegation clause, the Court lacks authority to decide the question of whether MBUSA can compel arbitration.

3

In support, MBUSA cites to *DeAngelis v. Icon Entertainment Group, Inc.*, 364 F. Supp. 3d 787 (S.D. Ohio 2019) (Marbley, J.).  In that case, Plaintiff, an exotic dancer, brought suit against Icon Entertainment Group (which operated Kahoots Gentlemen's Club, where Plaintiff performed), its individual owners, and a limited liability company that shared its principal place of business with Kahoots.  Plaintiff's agreement with Icon contained an arbitration provision, which delegated to the arbitrator the exclusive authority to resolve disputes over the validity and enforceability of the agreement.  Icon, a signatory to the agreement containing the arbitration clause, and the other defendants, who were nonsignatories to that agreement, all moved to stay or dismiss in favor of arbitration.  The court found that the arbitration agreement clearly and unmistakably delegated questions of arbitrability to the arbitrator.  *Id.* at 794.

The court further held that Plaintiff's challenges to the applicability of the arbitration agreement to the *nonsignatory* defendants "pertain[ed] to the enforceability or validity of the arbitration agreement," and therefore had to be arbitrated.  *Id.*  It acknowledged that some courts have held that a delegation clause does not clearly and unmistakably show that the plaintiff agreed to arbitrate the question of arbitrability as it relates to claims involving nonsignatories, and that the court therefore has authority to decide the issue.  *Id.* at 796 (citing *Republic of Iraq v. BNP Paribas USA*, 472 F. App'x 11, 13 (2d Cir. 2012), and *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127 (9th Cir. 2013)).  Other courts, however, have held that delegation clauses do apply to nonsignatories seeking to

4

enforce an arbitration provision against a signatory to that agreement. *Id.* (citing *Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 714-15 (5th Cir. 2017) and *Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205, 211 (2d Cir. 2005)).

Given the "presumption *against* delegation that may be overcome only with clear and unmistakable evidence," the court acknowledged the "logical conundrum in finding that [Plaintiff] must arbitrate the question whether she agreed to arbitrate against nonsignatories." *Id.* at 796 (emphasis in original). Nevertheless, it found that the Supreme Court's holding in *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524 (2019), prohibited the court from deciding the arbitrability issue. In *Henry Schein*, the court held that, when an arbitration agreement contains a delegation clause, courts have no authority to decide the arbitrability issue "even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." 139 S. Ct. at 529.

In *DeAngelis*, the court held that "to adjudicate whether [Plaintiff] is bound to arbitration with parties that she alleges are nonsignatories would be to engage in the type of analysis that the Supreme Court held impermissible in *Henry Schein*." 364 F.3d at 796. It concluded that "[w]hether a nonsignatory can enforce the arbitration agreement is a question of the enforceability of the arbitration clause, as to that defendant." *Id.* at 797. *DeAngelis* is distinguishable from the case at bar in that at least one of the defendants who moved to compel arbitration in that case was a signatory to the arbitration agreement.

5

Likewise, *Henry Schein* is factually distinguishable in that the parties to the lawsuit were also parties to the arbitration agreement. There, the plaintiffs sought both money damages and injunctive relief. Given that the arbitration agreement specifically excluded actions seeking injunctive relief, the district court found that the motion to compel arbitration was "wholly groundless." The Supreme Court, however, concluded that the "wholly groundless" exception was inconsistent with the Federal Arbitration Act. The question of whether the arbitration agreement applied to this particular dispute was delegated to the arbitrator. 139 S. Ct. at 527-28.

In the Court's view, neither *DeAngelis* nor *Henry Schein* dictates the result in this case. Here, we have MBUSA, a nonsignatory to the RPA, seeking to enforce the arbitration provision against Plaintiff. Given that Plaintiff and MBUSA never agreed to arbitrate *any* claims that might arise between them, neither can it be said that they clearly and unmistakably agreed to delegate the question of arbitrability to an arbitrator. Even in *Henry Schein*, the Supreme Court reiterated the principle that "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." 139 S. Ct. at 530.

As one district court noted, "*Henry Schein* did not change the fundamental requirement that the court must first determine whether *the parties* executed an agreement to arbitrate." *Ferrell v. SemGroup Corp.*, No. 19-cv-610, 2020 WL 5492989, at *4 (N.D. Okla. Sept. 9, 2020) (emphasis in original). *See also Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 n.9 (4th Cir. 2019)

(holding that delegation clauses "do not . . . preclude a court from deciding that a party never made an agreement to arbitrate *any* issue (which would necessarily encompass an arbitrability issue.") (emphasis in original); *Belyea v. GreenSky, Inc.*, No. 20-cv-1693, 2020 WL 3618959, at *4 (N.D. Cal. July 2, 2020) (holding that *Henry Schein* did not change the rule that the court's first job is to determine whether an arbitration agreement exists at all); *Puchalski v. TCFC HotelCo, LP*, No. 2:19-cv-812, 2020 WL 1891885, at *2 (D. Utah Apr. 16, 2020) ("*Henry Schein* did not determine that just because an agreement contains an express delegation of arbitrability to the arbitrator, nonsignatories to an agreement must be compulsorily referred to arbitration. Courts must still consider the first step . . . whether a valid arbitration agreement exists.").

The case of *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013), is almost directly on point, and the Court finds its reasoning to be persuasive. The named Plaintiffs in the putative class action, who had purchased their vehicles from a variety of Toyota dealerships, filed suit against Toyota, alleging that the antilock brake systems in their vehicles were defective. Toyota moved to compel arbitration, relying on the arbitration provisions contained in the purchase agreements signed by the plaintiffs and the various dealerships. Toyota, however, was not a signatory to any of those purchase agreements.

The Ninth Circuit held as follows:

> Here, the arbitration agreements do not contain clear and unmistakable evidence that Plaintiffs and Toyota agreed to arbitrate arbitrability. While Plaintiffs may have agreed to arbitrate arbitrability

7

> in a dispute with the Dealerships, the terms of the arbitration clauses are expressly limited to Plaintiffs and the Dealerships. . . . The Dealerships are not a party to this action. . . . Given the absence of clear and unmistakable evidence that Plaintiffs agreed to arbitrate arbitrability with nonsignatories, the district court had the authority to decide whether the instant dispute is arbitrable.

*Kramer*, 705 F.3d at 1127 (footnote omitted).

As in *Kramer*, the Court finds no clear and unmistakable evidence that Plaintiff and MBUSA, a nonsignatory to the RPA, agreed to delegate the issue of arbitrability to an arbitrator. The Court therefore finds that it has the authority to decide whether MBUSA can compel Plaintiff to arbitrate this dispute.

### C.    Can MBUSA Compel Arbitration?

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, "reflects the overarching principle that arbitration is a matter of contract." *American Exp. Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013). Contract language is construed "in light of the strong policy in favor of arbitration, resolving any doubts as to the parties' intentions in favor of arbitration." *Jones v. U-Haul Co. of Mass. & Ohio Inc.*, 16 F. Supp. 3d 922, 932–33 (S.D. Ohio 2014) (Graham, J.).

Nevertheless, the Court will order arbitration only of those disputes "that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). *See also Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) ("When asked by a party to compel arbitration under a contract, a federal court must determine whether the parties agreed to arbitrate the dispute at issue.").

The Sixth Circuit has noted that arbitration must be ordered only if the court is satisfied that neither the formation of the agreement nor its enforceability or applicability to the dispute is in issue. *In re: Auto. Parts Antitrust Litig.*, 951 F.3d 377, 382-83 (6th Cir. 2020). *See also* 9 U.S.C. § 4. "In order to show that the validity of the agreement is 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the [enforceability] of the agreement to arbitrate." *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002).

Here, even though Plaintiff's claims clearly relate to the "condition of this Vehicle," the arbitration provision in the RPA applies only to claims or disputes "between *you* ["the Purchaser"] *and us or our employees, successors or assigns.*" Doc. #17-1, PageI#140. As previously noted, "us" and "our" refers only to Jeff Wyler Mercedes-Benz. MBUSA is not an employee, successor or assign of Jeff Wyler Mercedes-Benz. Accordingly, on their face, Plaintiff's claims against MBUSA, a nonsignatory, are outside the scope of the arbitration provision.

Nevertheless, the fact that Plaintiff did not agree to arbitrate any disputes with MBUSA does not necessarily mean that MBUSA cannot compel Plaintiff to arbitrate this dispute. The question of whether, and under what circumstances, a nonsignatory can compel a signatory to arbitrate a dispute is a matter of state contract law. In *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624 (2009), the Supreme Court held that "a litigant who was not a party to the relevant arbitration

9

agreement may invoke § 3 [of the FAA] if the relevant state contract law allows him to enforce the agreement." *Id.* at 632.

Quoting *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637 (2020), MBUSA notes that a nonsignatory can "rely on state-law equitable estoppel doctrines to enforce an arbitration agreement." *Id.* at 1644 (citing *Arthur Andersen*, 556 U.S. at 631-32). MBUSA notes that, although Plaintiff's claims are brought under Ohio law, the parties agreed that the RPA would be governed by Kentucky law. Doc. #17-1, PageID#140. The Court need not reach the question of whether this provision requires the Court to apply Kentucky law, because the law of Kentucky and Ohio is substantially the same concerning the circumstances under which MBUSA, a nonsignatory, can enforce the arbitration provision against Plaintiff.

Ohio allows a nonsignatory to invoke the doctrine of equitable estoppel to compel arbitration when: (1) a signatory "must rely on the terms of the written agreement in asserting [its] claims against the nonsignatory"; or (2) "when the signatory . . . raises allegations of . . . substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Liedtke v. Frank*, 437 F. Supp. 2d 696, 699 (N.D. Ohio 2006) (internal quotation omitted). Kentucky allows a nonsignatory to invoke the doctrine of equitable estoppel under the same two circumstances. *See Orvil Nelson & Co.,*

10

*Inc. v. All Am. Homes of Tenn.*, No. 5:07-cv-239, 2008 WL 11347938, at *6 (E.D. Ky. April 3, 2008).[1]

Plaintiff has not alleged substantially interdependent and concerted misconduct by MBUSA and Jeff Wyler Mercedes-Benz. In fact, Plaintiff alleges no wrongdoing by the dealership. Therefore, the only question is whether Plaintiff must rely on the terms of the RPA in asserting his claims against MBUSA. Again, those claims include alleged violations of Ohio's Lemon Law, the Magnuson-Moss Warranty Act, the Ohio Consumer Sales Practices Act, and a claim of tortious breach of warranty.

Plaintiff's Amended Complaint makes no specific reference to the RPA, and Plaintiff does not rely on any of the terms of the RPA as the foundation for his claims against MBUSA. Each of his claims stems solely from MBUSA's alleged breaches of the express and implied warranties it gave when Plaintiff bought the car. Plaintiff does not claim that Jeff Wyler Mercedes-Benz is in any way liable for those alleged breaches. Accordingly, the Court rejects MBUSA's argument that, in order to avoid arbitration, Plaintiff is engaging in "selective pleading" by suing only MBUSA and not Jeff Wyler Mercedes-Benz.

---

[1] MBUSA notes that Ohio courts have held that "a non-signatory who knowingly accepts the benefits of an agreement is estopped from denying a corresponding obligation to arbitrate." *Ohio Dep't of Admin. Servs. v. Design Grp., Inc.*, 10th Dist. No. 07AP-215, 2007-Ohio-6278, ¶ 10. The relevance of this case is unclear, given that MBUSA is the only "nonsignatory" at issue and it is the party seeking to *compel* arbitration.

MBUSA, however, argues that Plaintiff's claims are intertwined with the RPA because "Plaintiff seeks rescission, a remedy that does not stand without the Retail Purchase Agreement." Doc. #18, PageID#160. It also argues that Plaintiff's claims are intertwined because any determination of damages will necessarily implicate the RPA.

The Ninth Circuit rejected similar arguments in *Kramer.* It noted that, under California law, the relevant question is whether the signatory has to rely on the existence of the purchase agreement to establish the elements of the claims asserted against the nonsignatory. It is irrelevant "whether the court must look to the Purchase Agreement to ascertain the requested relief. The emphasis of the case law is unmistakably on the claim itself, not the relief." *Kramer*, 705 F.3d at 1131-32.

Again, the Court finds that *Kramer* is persuasive. As with California, the relevant question under Ohio law is whether the signatory must rely on the terms of the purchase agreement in asserting his claims against the nonsignatory. *See Liedtke*, 437 F. Supp. 2d at 699. Plaintiff's requested remedies are irrelevant to this analysis. As in *Kramer*, although Plaintiff's claims against MBUSA presume a transaction involving the purchase of a Mercedes-Benz vehicle, the claims do not "rely on the existence of a purchase agreement." Regardless of the terms of the RPA, Plaintiff may bring breach of express and implied warranty claims against MBUSA. *See Kramer*, 705 F.3d at 1132.

III. Conclusion

For the foregoing reasons, the Court concludes that MBUSA, a nonsignatory to the RPA, cannot rely on the doctrine of equitable estoppel to force Plaintiff to arbitrate the disputes at issue. The Court therefore OVERRULES Defendant Mercedes-Benz USA, LLC's Motion to Compel Arbitration, Doc. #16.

Date: March 30, 2021

*Walter H. Rice* (tp - per Judge Rice authorization after his review)
WALTER H. RICE
UNITED STATES DISTRICT JUDGE